IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

XMV, INC.,
**Employer Below, Petitioner**

**FILED**
**September 30, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-128**        (JCN: 2022010928)

FREDRICK E. AYERS,
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner XMV, Inc., ("XMV") appeals the February 24, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Fredrick E. Ayers filed a response.[1] XMV did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Ayers a 4% permanent partial disability ("PPD") award, and instead granted him an additional 22% PPD award, for a total PPD award of 26%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Ayers submitted an Employees' and Physicians' Report of Occupational Injury or Disease dated September 11, 2020, indicating that a right knee injury occurred on September 3, 2020. Per the physician's section, Mr. Ayers sustained a sprain of the right knee with internal derangement as a direct result of an occupational injury. Mr. Ayers underwent an MRI of the right knee on October 5, 2020, revealing extensive tearing of the medial meniscus; medial tear of the free edge of the posterior horn of the lateral meniscus; extensive cartilage loss in the medial femorotibial compartment and to a lesser extent to the patellofemoral compartment; subchondral reactive marrow change subjacent cartilage abnormalities; moderate suprapatellar joint effusion with mild synovial hypertrophy; and moderate sized Baker's cyst. The claim administrator issued an order dated October 14,

---

[1] XMV is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq. Mr. Ayers is represented by Robert F. Vaughan, Esq., and Linda N. Garrett, Esq.

1

2020, holding the claim compensable for complex tear of the medial meniscus of the right knee and peripheral tear of the lateral meniscus of the right knee.[2]

On October 29, 2020, Mr. Ayers underwent right knee arthroscopy with partial medial meniscectomy and medial meniscal root repair, chondroplasty of medial femoral condyle, and aspiration of Baker's cyst. The post-operative diagnosis was medial meniscus tear and Baker's cyst, right knee, and chondromalacia. On January 22, 2021, Mr. Ayers underwent an MRI of the right knee revealing partial resection of the medial meniscus; radial tear of the lateral meniscus; partially ruptured Baker's cyst; cartilage erosions and osseous erosions of the medial and lateral compartments; mild flattening and sclerosis of the medial femoral condyle; large joint effusion; previous patellar sleeve injury; and tendinopathy of the patellar tendon. On March 24, 2021, Mr. Ayers underwent a second right knee arthroscopy with partial, medial and lateral meniscectomy. The post-operative diagnosis was medial meniscus tear, lateral meniscus tear, right knee with chondromalacia.

Mr. Ayers underwent an MRI of the right knee on August 9, 2021, revealing postsurgical changes of the medial meniscus; superimposed tear of the free edge of body segment was suspected; minimal blunting of the free edge of the lateral meniscus body segment likely represents a small free edge tear; tricompartmental degenerative changes with chondrosis; and small joint effusion and Baker's cyst. On September 28, 2021, Mr. Ayers underwent a partial knee replacement. The diagnosis was medial compartmental osteoarthritis of the right knee with obesity. The Board noted that this surgery was authorized by the claim administrator. Mr. Ayers was seen at St. Mary's Pain Relief several times from April 22, 2022, through October 27, 2022. On April 22, 2022, Mr. Ayers reported right knee pain. The assessment was right knee pain and history of partial knee replacement.

On October 24, 2022, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Mr. Ayers. The diagnosis was sprain of the right knee, tear of the medial meniscus and tear of the lateral meniscus, and non-compensable osteoarthritis of the right knee. Dr. Mukkamala opined that Mr. Ayers' current complaints were causally related to the pre-existing, non-compensable degenerative arthrosis. Dr. Mukkamala further opined that Mr. Ayers had reached maximum medical improvement ("MMI") from the compensable injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Mukkamala opined that Mr. Ayers had a 4% whole person impairment ("WPI") of the right knee due to limited range of motion ("ROM"); a 4% WPI from undergoing partial medial and partial lateral

---

[2] Prior to the compensable injury, Mr. Ayers was granted a 7% PPD award on February 10, 2004, for an injury to his cervical and lumbar spine. Medical records indicate that Mr. Ayers had knee pain in May of 2018.

meniscectomy per Table 64 of the *Guides*; and a 20% WPI from undergoing unicompartmental knee replacement per Table 66 of the *Guides*. Dr. Mukkamala associated the unicompartmental knee replacement with Mr. Ayers's non-compensable arthrosis of the right knee and therefore, opined that the 20% WPI was not causally related to the compensable injury. Dr. Mukkamala reported that he could only choose one of the two remaining impairments. Dr. Mukkamala opined that Mr. Ayers had a 4% WPI due to the compensable injury.

Mr. Ayers was evaluated by Bruce A. Guberman, M.D., on July 11, 2023. Mr. Ayers reported constant pain as well as weakness and instability in the right knee, and he denied any prior symptoms or injuries related to the right knee. The impression was history of strain and contusion of the right knee occurring at work on September 3, 2020; status post right knee partial medial meniscectomy, medial meniscal root repair, chondroplasty of the medial femoral condyle of the right knee and aspiration of Baker's cyst of the right knee on October 29, 2020; status post right knee arthroscopy with partial medial and lateral meniscectomy on March 24, 2021; and status post robotic partial right knee replacement on September 28, 2021. Dr. Guberman opined that Mr. Ayers had reached MMI from the compensable injury. Using the *Guides*, Dr. Guberman opined that Mr. Ayers had a 30% WPI from undergoing partial knee replacement per Table 66. Dr. Guberman noted that imaging evidence showed progressively more severe degenerative changes in the right knee. Dr. Guberman opined that Mr. Ayers had at least a small degree of degeneration before the injury that became progressively more severe after the injury and subsequent surgeries. Dr. Guberman opined that the degenerative changes contributed to the subsequent need for a partial knee replacement. Importantly, however, Dr. Guberman found that Mr. Ayers would not have undergone the replacement, but for the compensable injury. Dr. Guberman apportioned 4% WPI to pre-existing degenerative changes and 26% impairment to the compensable injury.

On June 3, 2024, Mr. Ayers was evaluated by Austin Nabet, D.O. Mr. Ayers reported right knee pain, denied any prior injuries to the right knee, and denied any prior right knee pain or treatment. The diagnosis was right knee acute medial lateral meniscus tear, status-post partial medial and lateral meniscal debridement, right knee preexisting multi-compartment osteoarthritis, and status-post partial knee replacement. Dr. Nabet opined that Mr. Ayers had reached MMI. Dr. Nabet reported that the MRI of the right knee from October of 2020 showed arthrosis of the medial compartment and of the patellofemoral compartment, which was consistent with preexisting disease. Dr. Nabet opined that the arthroplasty was not indicated for the compensable injury but instead for Mr. Ayers' preexisting condition. Using the *Guides*, Dr. Nabet opined that Mr. Ayers had a diagnosis-based WPI of 4% for partial medial and lateral meniscal debridements of the right knee due to the compensable injury per Table 64.

Dr. Mukkamala authored an Addendum Report dated June 25, 2024, in which he opined that if the knee replacement was considered compensable then Mr. Ayers would have a 20% WPI resulting from the compensable injury.

On February 24, 2025, the Board reversed the claim administrator's order granting Mr. Ayers a 4% PPD award and instead awarded him an additional 22% PPD, for a total of a 26% PPD. The Board found that Drs. Mukkamala and Guberman's recommendations were equally persuasive. Thus, the Board adopted Dr. Guberman's report as it was the most consistent with Mr. Ayers' position as required by W. Va. Code § 23-4-1g. XMV now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

XMV argues that the knee replacement surgery was requested for a noncompensable condition, thus, impairment related to the surgery should not be added to the claim. Further, XMV argues that Dr. Nabet's opinion should not have been discounted when he and Dr. Mukkamala agree that the impairment related to the compensable injury is 4%, making Dr. Guberman's report the outlier. We disagree.

Here, the Board found that:

> [t]he evidence establishes that on September 28, 2021, the claimant underwent a partial knee replacement. Per the employer's Closing Argument,

the surgery was authorized. Both Dr. Mukkamala and Dr. Guberman opined that based upon Table 66 of the *Guides*, the claimant was entitled to impairment for the authorized surgery. In his Addendum Report dated June 25, 2024, Dr. Mukkamala opined that the claimant was entitled to a 20% WPI due to the compensable injury. Dr. Guberman opined that the surgery represented a 30% impairment, but he apportioned 4% impairment to the claimant's pre-existing degenerative changes of the knee. Dr. Guberman opined that the claimant had a 26% WPI due to the compensable injury. Dr. Nabet rendered no opinion as to the amount of impairment attributed to the authorized surgery. Dr. Nabet's opinion of a diagnosis-based WPI of 4% per Table 64 is determined to be an outlier and not reliable.

Further, the Board found that the opinions of Drs. Guberman and Mukkamala were of equal evidentiary weight. Thus, the Board adopted the resolution that is the most consistent with Mr. Ayers' position, as required by West Virginia Code § 23-4-1g (2003).

XMV argues that the claim administrator authorized the surgery for noncompensable osteoarthritis. However, the reasoning used by the claim administrator to authorize the surgery cannot be determined here as the employer failed to submit that order within its appendix. We note that just before authorization was requested for the surgery, the surgeon's assessment included a complex tear of medial meniscus of knee as current injury and chondromalacia of knee. Further, the evidence establishes that surgery was authorized by the claim administrator. Thus, we conclude that XMV failed to establish that the Board erred in allowing the PPD award to include impairment related to the surgery, and we find no merit in this argument.

Upon review, we conclude that the Board was not clearly wrong in finding that the opinions of Drs. Mukkamala and Guberman were of equal evidentiary weight. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order.

Accordingly, we affirm the Board's February 24, 2025, order.

Affirmed.

**ISSUED:** September 30, 2025

5

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White